# EXHIBIT 38

CREEC | CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER

104 Broadway, Suite 400
Denver, CO 80203
303.757.7901
www.creeclaw.org

Caitilin R. Hall
chall@creeclaw.org

January 22, 2018

VIA Email to ICE-FOIA@dhs.gov
U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

RE: **Freedom of Information Act Request**

To Whom it May Concern:

This is a request for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552. We request the following records in the custody or control of the Department of Homeland Security (DHS), and its relevant subsidiary agencies or departments, including Immigration & Customs Enforcement (ICE). As used in this request, the term "relating to" or "related to" means referring to, constituting, representing, defining, depicting, concerning, embodying, reflecting, identifying, stating, mentioning, governing, addressing, or pertaining to the subject matter of the request in whole or in part, directly or indirectly.

The purpose of this section of the request is to seek information regarding the Denver Contract Detention Facility ("DCDF") located at 3130 North Oakland Street, Aurora, CO 80010 where ICE detainees are held. This facility is also sometimes known as Aurora ICE Processing Center. Unless otherwise specified, all references to a detention facility in this letter are to the detention facility in Aurora, CO where ICE detainees are held.

1. Any contract(s) and/or agreement(s) between the United States Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE") and The GEO Group, Inc. ("GEO") that have been in place at any time between January 1, 2010 until the present, even if such contracts were entered into prior to 2010.

2. Any contract(s) and/or agreement(s) with third party contractors, other than GEO, regarding the provision of services or care to ICE detainees including but not limited to food, emergency response, or medical care for

ICE detainees at DCDF. The time frame for this request is January 1, 2010 to the time the search for these documents has commenced.

3. Any and all studies, reports, audits, or analyses produced by the federal government evaluating the conditions at DCDF between January 1, 2010 to the time the search for these documents has commenced.

4. Any and all writings on any planned changes to the building where ICE detainees reside, including but not limited to any and all studies, reports, audits, or analyses relating to the conditions, accessibility, operations, capacity, and/or need for expansion of DCDF.

5. Any and all writings and documents related to current policies and protocols concerning medical care and mental health care for immigrant detainees in DCDF.

6. Any and all writings and documents related to current policies and protocols concerning the provision of outdoor exercise to immigrant detainees in DCDF.

7. The current staffing levels of medical personnel in DCDF. This request also includes staffing levels of mental health care personnel in DCDF.

8. Any documents, records or logs relating to requests for mental health services made by detainees in DCDF that were denied. Additionally, we seek any communications between the facility and ICE regarding requests that were denied and any actions taken in response. The timeframe for this request is January 1, 2010, until the search for these documents is conducted.

9. Any documents, records or logs relating to requests for medical care made by detainees in DCDF that were denied. Additionally, we seek any communications between the facility and ICE regarding requests that were denied and any actions taken in response. The timeframe for this request is January 1, 2010, until the search for these documents is conducted.

10. Any documents, records, or logs relating to complaints or filed by ICE detainees at DCDF. Additionally, we seek any communications between the DCDF and ICE regarding grievances filed and any actions taken in response. The timeframe for this request is January 1, 2010, until the search for these documents is conducted.

11. Any documents or internal communications relating to policies about providing mental health services to detainees, the process for requesting such services, and the mental health professional staffing levels at DCDF. The timeframe for this request is January 1, 2010, until the search for these documents is conducted.

12. Any and all writings related to the current housing and classification policies for detainees held in DCDF.

13. Any and all writings related to grievances made between January 1, 2010, and the present by ICE detainees held at DCDF, including but not limited to, any policies or procedures governing how such grievances are tracked and how prisoners/detainees can appeal their grievances, any grievance log or database maintained by GEO, ICE, or other entity, any emails between ICE and GEO related to detainee grievances, and any written responses by ICE or GEO to detainee grievances.

14. Any and all writings related to use of force at DCDF with respect to ICE/DHS prisoners/detainees, including any written use of force policy and any reports, audits, reviews, or documentation of use of force incidents involving DHS/ICE prisoners/detainees at DCDF. The timeframe for this request is January 1, 2010 until the search for these records has commenced.

15. Any writings, including reports or logs, created by the Field Office Director (FOD) or Assistant Field Office Director (AFOD) regarding segregation of detainees at DCDF pursuant to Section 5.3 of the Department of Homeland Security Directive 11065.1, *Review of the Use of Segregation for ICE Detainees*, that were prepared for the ERO Custody Management Division (CMD) from 2013 to present.

16. Any notifications received in writing by the FOD from the facility administrator regarding placement of DCDF detainees in segregation pursuant to Section 5.1 and/or Section 5.4 of Directive 11065.1 from 2013 to present.

17. Any other documents produced by ICE in accordance with Directive 11065.1 from 2013 to present regarding the placement of detainees in segregation at DCDF.

18. Any and all writings related to changes in policies and/or procedures at DCDF in response to the report "Fatal Neglect: How ICE Ignores Deaths in

Detention," written by the American Civil Liberties Union ("ACLU"), Detention Watch Network ("DWN"), and National Immigrant Justice Center ("NIJC"), which was published in February of 2016. The timeframe for this request is February 2016 until the search for these records has commenced.

19. Any Detainee Death Review, Significant Event Notification, Significant Incident Report, or Reports related to a "permanent injury beyond medical intervention" for any person detained in ICE custody at DCDF from 2010 to the time the search for these records has commenced.

20. Any and all writings related to changes in policies and/or procedures following the Detainee Death Review of Evalin Ali Mandza. The timeframe for this request is April 2012 to the time the search for these records has commenced.

21. Any and all documents or writings relating to statements by GEO as to its compliance with the terms of the contract with ICE.

22. On an annual basis from 2012 to 2017, the number of ICE detainees at DCDF who were deaf or hard of hearing, who used a wheelchair, and/or who were blind or vision-impaired.

23. In addition to the records requested above, I also request records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, I also request any such records prepared in connection with the processing of this request.

The purpose of this section of the request is to seek information regarding Intergovernmental Services Agreements ("IGSAs") <u>between ICE and local governments in Colorado</u>. Specifically, we are looking for any current agreements between ICE and a local Colorado government, even if that IGSA is not currently being used to house ICE detainees.

24. Any IGSA or other contracting agreement executed between ICE and any local government in the state of Colorado, regarding housing ICE detainees or providing food or medical care for ICE detainees, from January 1, 2010 until the search for these records has commenced.

25. The current number of detainees housed in each facility subject to an IGSA with ICE and any local government in Colorado.

26. Any and all inspections, studies, reports, audits, or analyses produced by the federal government evaluating the conditions at any facility used by ICE subject to an IGSA between ICE and any local government in the state of Colorado. The period for this request is January 1, 2010 to the time the search for these documents has commenced.

27. Any and all writings on any planned changes to the building where ICE detainees reside subject to an IGSA between ICE and any local government in the state of Colorado, including but not limited to any and all studies, reports, audits, or analyses relating to the conditions, accessibility, operations, capacity, and/or need for expansion.

28. Any complaints or grievances received by ICE regarding immigrant detainees held in any Colorado facility apart from DCDF. The timeframe for this request is January 1, 2014 to the time the search for these documents has commenced.

29. Any notifications received in writing by the FOD from the facility administrator at any facility subject to an IGSA between ICE and any local government in Colorado regarding placement of detainees in segregation pursuant to Section 5.1 and/or Section 5.4 of Directive 11065.1 from 2013 to present.

30. Any other documents produced by ICE in accordance with Directive 11065.1 from 2013 to present regarding the placement of detainees in segregation at facility subject to an IGSA between ICE and any local government in Colorado.

31. In addition to the records requested above, I also request records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, I also request any such records prepared in connection with the processing of this request.

Please contact me if you need any clarification on the records requested. If you have an electronic means of providing this information that would be acceptable. The Civil Rights Education and Enforcement Center ("CREEC") requests a waiver of fees for document search, review, and duplication on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). CREEC also requests a waiver of search fees on the grounds that the CREEC qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

If such a waiver is not granted and copying is required, we will pay reasonable copying costs up to $200. If you expect copying costs to exceed that amount, please contact me first. Please reply to this request within 20 working days, or as required by statute. 5 U.S.C. §552 (a)(6)(A)(1).

Finally, if these records are not in your custody or control, then I ask that you promptly notify me and also state in detail to the best of your knowledge and belief the reason for the absence of the records from your custody or control, the location of the records, and identify the person(s) now having custody or control of the records.

Sincerely,

CIVIL RIGHTS EDUCATION
AND ENFORCEMENT CENTER

Caitilin R. Hall
Paralegal