**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch**

Civil Action No. 18-cv-00302-RPM

CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY and
UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,

    Defendants.

_____

**JOINT STATUS REPORT AND PROPOSED
PRODUCTION SCHEDULE**
_____

    At the December 7, 2018, Status Conference, the Court ordered the parties to submit a joint proposed order setting forth a production schedule covering the remaining documents responsive to Plaintiff's Immigration and Custom Enforcement (ICE) FOIA requests.  The parties have discussed a process by which production of the remaining documents responsive to Plaintiff's FOIA requests can be completed.  The parties have agreed upon a framework for aspects of that process and to submit remaining disagreements as set forth below.

    1.    The proposed schedule includes a framework that provides Plaintiff with flexibility to prioritize and focus production of the remaining documents most important to it, rather than adopting a set schedule that simply sets forth a timeline for review and production of the remaining 60,000 documents.  Accordingly, the parties anticipate that as additional

production is completed modifications to the prioritization and process may be necessary, as part of a continuing collaborative process.

    2.    Plaintiff has identified in order of priority the following 13 categories of documents to which the process will apply:

    (1)    ICE Directive, "Assessment and Accommodations for Detainees with Disabilities" (December 15, 2016).  This directive is mentioned in section 4.8 of ICE's 2011 standards under the section entitled "References" (this item, though not specifically mentioned in any prior request, is believed by Plaintiff to be within the requests referred to in item 4 of Schedule I).

    (2)    Policies and procedures that apply to detainees with disabilities and accommodations therefor at Aurora and nationally.  ECF No. 17, Ex. 49, Req. 3; Ex. 61, Req. 1.

    (3)    Detainee Death Reviews for only three facilities.  *Id.*, Ex. 1, Reqs. 16, 17; Ex. 27, Req. 25; Ex. 38, Req. 19.

    (4)    Policies, locations, and access procedures for videophones, TTY/TTD machines, sign language interpreters, or other accommodations to communication-impaired detainees at Aurora.  *Id.*, Ex. 49, Reqs. 6-10.

    (5)    Documents identifying facilities that have video phones nationally.  *Id.*, Ex. 61, Req. 3.

    (6)    Documents that show identity and qualifications of the ADA Coordinator at Aurora.  *Id.*, Ex. 49, Req. 5.

    (7)    Documents sufficient to provide an inventory of current staffing of medical personnel at Etowah and Aurora.  *Id.*, Ex. 27, Req. 7; Ex. 38, Req. 7.

    (8)    Current policies and protocols about mental health care at Aurora.  *Id.*, Ex. 38, Req. 5.

    (9)    Records or logs of denied requests for mental health services at Aurora.  *Id.*, Ex. 38, Req. 8.

  (10) Documents or communications reflecting policies, procedures, and staffing levels for providing of mental health services at Aurora. *Id.*, Ex. 38, Req. 11; Ex. 49, Req. 3.

  (11) All field office reports on segregation of detainees at Aurora pursuant to section 5.3 of DHS Directive 11065.1 from 2013 to the present.

  (12) Documents sufficient to inform CREEC of the total number of detains at Aurora who are deaf/hard of hearing, blind/vision impaired, epileptic, use a wheelchair or have diabetes, and records or logs of dispositions of requests to accommodate same. *Id.*, Ex. 38, Req. 22; Ex. 49, Reqs. 1 & 4.

  (13) Records from field offices documenting cases of serious physical or mental illness, requests to accommodate same, and disposition thereof in accordance with 2011 Performance-Based National Detention Standards 4.3 and 4 8. *Id.*, Ex. 61, Req. 2.

  3. The first step in the proposed process is to determine the number of pages that may be responsive to each category. To do so, the parties will meet and confer to identify the search terms to be used to retrieve responsive documents from the applicable data set or sets of each category. The total pages for all categories is approximately 60,000 pages. To facilitate this process, ICE FOIA will provide search-term recommendations to Plaintiff for each category, to which Plaintiff may offer additional terms to ensure its satisfaction with the search.

  4. ICE anticipates that once the search terms have been identified, page counts for each category can be provided within 60 days. Ascertaining the page count for each category will allow Plaintiff to choose one or more categories on which it wishes ICE FOIA to focus upon first. If Plaintiff elects to focus only on several categories (rather than all 13), the document search process for those categories can be completed within several weeks of the search term list being finalized.

5. After ICE FOIA performs all of the category-specific searches (which involves use of Relativity, a software database search platform, and FOIAXpress, software designed to process FOIA requests), Plaintiff will be able to select the order in which it wants ICE FOIA to process the categories of documents. If the Relativity search results in the identification of a large set of documents for a category, Plaintiff may recommend additional search terms be employed to narrow the results. If an additional search still results in a large set of documents, ICE FOIA is willing to sample those documents or Plaintiff can choose to focus on another category. Once the sample documents are processed for release, Plaintiff can then elect (1) to have ICE FOIA process the entire set of documents, (2) to request an additional search using fewer search terms and have ICE FOIA produce the resulting number of documents, or (3) have ICE FOIA focus instead on another category with fewer documents to reduce the necessary processing time for release of the documents.

6. Subject to Plaintiff's objections below, the iterative process outlined above would be employed to complete review and production of documents responsive to the 13 categories identified above. After Plaintiff identifies the order it would have the 13 categories of documents produced, ICE FOIA proposes to focus the resources available to this case to review and approve release of those documents on a rolling production basis. ICE FOIA notes that functionality constraints with Relativity and FOIAXpress require that each discrete set of documents to be processed and reviewed be loaded on only one platform at a time, *i.e.*, Relativity or FOIAXpress, which precludes simultaneous searching and processing of a particular document set.

7.  The Defendants have been responding to Plaintiff's FOIA requests in the conventional manner used by other federal agencies but have also modified this standard process to include electronic word searches and identifying publicly available information to expedite Plaintiff's requests. The Plaintiff disagrees with the Defendants' standard process and schedule in two significant particulars:

    a.  Plaintiff believes that the proposed word searches are unnecessary and not even useful with respect to many of the specific documents and narrow categories of documents in the Plaintiff's prioritized list, including specifically identified documents or specifically identified form documents (items 1, 3, 6), policies and procedures applicable to specific functions at Aurora (which would necessarily include those that apply nationally) (items 2, 4, 8, 9, 10), and specific categories of documents as prescribed by regulation or directive (category 11). These may be much more efficiently located by simple inquiry to the facility involved, *e.g.*, "what policies and procedures are available to you to inform matters involving to detainees with disabilities?" If the Court agrees that a reasonable search and review of some of the documents can be accomplished without a time consuming electronic word search and manual review of vast quantities of documents "hit" as a result of the electronic search, Plaintiff requests the Court to set a reasonably prompt deadline for completion of that processing and review for production.

      b.      The Plaintiff objects to the mere commitment to "focus resources available to this case" for their review and approval of disclosure of documents located pursuant to the ICE FOIA electronic search and processing. The Defendants have declared themselves able to review and approve 500 pages per month. Yet the Defendants' responses to the Plaintiff's request and document production has been due for at least 21 months and most for many more; yet less than 1,900 pages have been produced to date. Plaintiff believes that in fairness, the Plaintiff is entitled to more than the typical share of the Defendants' resources in order to "make up" for the past in which at least 10,000 pages should have produced but the result has been less than 1,900. In any event, a deadline should be set. As to documents that are determined to be subject to word search according to the procedures above, Plaintiff requests the Court to impose a definite schedule for review and production once the final number of pages for each category is determined.

8.      Additionally, Defendants' undersigned counsel has discussed with ICE FOIA ways that the production process can be streamlined and reports:

      a.      The agency counsel assigned to this case has already been assisting with review of responsive documents to speed up production, a function she does not normally perform, and ICE FOIA has assigned a staff member with expertise in Relativity to assist on this case.

        b.        Production has been ongoing. Since the last Status Conference, ICE FOIA has produced approximately 1,000 pages of responsive documents related to Plaintiff's request for contracts related to the detention of aliens at private detention centers. (Work on Plaintiff's FOIA requests was suspended during the month-long government shutdown.)

        c.        On February 7, 2019, ICE FOIA produced another set of 528 pages of documents.

9.        The parties will continue to collaborate on the process outlined above and anticipate being able to provide a more refined production schedule at a further status conference that should be scheduled at the February 15, 2019 Status Conference.

Respectfully submitted this 8th day of February 2019,

|  |  |
|---|---|
|  | JASON R. DUNN<br>UNITED STATES ATTORNEY |
| *s/ Thomas B. Kelley*<br>Thomas B. Kelley<br>KILLMER LANE & NEWMAN, LLP<br>1543 Champa Street, Suite 400<br>Denver, Colorado 80202<br>Telephone: (303) 571-1000<br>Facsimile: (303) 571-1001<br>tkelley@kln-law.com | *s/ Mark S. Pestal*<br>Mark S. Pestal<br>Assistant U.S. Attorney<br>Office of the United States Attorney<br>1801 California Street, Suite 1600<br>Denver, Colorado 80202<br>(303) 454-0100<br>mark.pestal@usdoj.gov |
| Steven D. Zansberg<br>Amber R. Gonzales<br>BALLARD SPAHR, LLP<br>1225 Seventeenth Street, Suite 2300<br>Denver, Colorado 80202<br>Telephone: (303) 292-2400<br>Facsimile: (303) 296-3956<br>zansbergs@ballardspahr.com<br>gonzalesa@ballardspahr.com | *Attorney for Defendants* |
| Timothy P. Fox<br>Elizabeth B. Jordan<br>CIVIL RIGHTS EDUCATION AND<br>ENFORCEMENT CENTER<br>104 Broadway, Suite 400<br>Denver, Colorado 80203<br>tfox@creeclaw.org<br>ejordan@creeclaw.org |  |
| *Attorneys for Plaintiff* |  |