**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00302-RPM

CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY and,
UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,

      Defendants.

**PLAINTIFF'S MOTION FOR SANCTIONS AND ORDER TO PRODUCE DOCUMENTS**

The Plaintiff, by its attorneys of record, moves this Honorable Court to award sanctions against the Defendant, United States Immigration and Customs Enforcement ("ICE"), for its egregious litigation misconduct detailed below. Specifically, the Plaintiff respectfully asks the Court to award attorney fees incurred by the Plaintiff to date, and to order ICE to promptly produce (1) Detainee Death Reviews and related documents for Vincente Caceres Maradiaga and Kamyar Samimi; and (2) policies and protocols that inform decisions on medical and mental health care, accommodations for disabilities, and segregated confinement of detainees, both nationally and at the Aurora facility, after making inquiry of decision makers on those subjects at ICE's home offices and at the field offices supervising the Aurora facility. As grounds for this motion, Plaintiff states as follows:

1.      Pursuant to U.S. District Court Local Rule 7.1, Plaintiff has attempted to confer with counsel for the Defendants regarding the relief requested in this Motion in an effort to resolve these matters without intervention from this Court. On May 6, 2019, the undersigned attempted to confer with Mark Pestal, counsel for the Defendants, via email. That e-mail requested a response within 10 days. On the same day, Mr. Pestal responded that he would not be able to address the issues raised until after Friday May 10, 2019, but that he would so then. The undersigned has received no further communication from Mr. Pestal. A copy of this email exchange is attached hereto as **Exhibit 1**.

## INTRODUCTION

2.      From the inception of this fifteen-month-old case, ICE has insisted on limiting its hunt for requested documents to word searches of its electronically stored information data base. With the exception of ICE's contracts with operators of some of its detention facilities, aged death reviews, and other documents that have obviously been released pursuant to prior requests, production of any meaningful documents has been virtually nil. Despite Plaintiff's drastic narrowing of it requests, the word search process has proved useless in locating the two remaining categories of documents that the Plaintiff has long identified as the most important to it: 1) Detainee Death Reviews and related documents for Vincente Caceres Maradiaga (d. 5/31/17 at Adelanto) and Kamyar Samimi (d. 12/2/17 at Aurora); and 2) policies and protocols available to inform decisions on medical and mental health care of detainees, accommodation of detainees with disabilities, and segregated confinement of detainees.

3.      Regarding the Detainee Death Review documents, until April 25, 2019, ICE has taken the position they have no records pertaining to either Mr. Maradiaga or Mr. Samimi, let

alone any review of the circumstances of the death of either. A copy of the e-mail reporting ICE's search results as "0" for both is attached as **Exhibit 2,** at p. 2.

4. In a March 22, 2019 telephone conference among counsel of record and Ann Rose, Esq., counsel to ICE, counsel for the Plaintiff inquired how these records of known deaths could be non-existent, and asked that inquiries be made of persons likely to have direct knowledge. That request was refused. Later the same day, counsel for the Plaintiff received an email from Ms. Rose that advised that even if in existence when Plaintiff's request was made, records would not have been included in the search results if not deemed complete at that time. A copy of that email is **Exhibit 3,** at p. 2.

5. On April 3, 2019, counsel for Plaintiff sent Ms. Rose and defense counsel an email inquiring why, if the records were being withheld because of incompleteness, there has been no acknowledgement of their existence and a claim of exemption, rather than simply a claim of non-existence. On April 24, 2019 ICE responded through counsel by email that "pending death investigations have not been withheld pursuant to a claim of exemption," but withheld instead because ICE chose to interpret the Plaintiff's request for "all death reviews" as calling for only for "completed death reviews." The Plaintiff hopes the Court will encounter no difficulty understanding why the Plaintiff found that position by ICE to be disingenuous. A copy of this e-mail exchange is **Exhibit 3**, at pp. 1-2.

6. In an e-mail of Thursday, April 25, 2018, ICE, through defense counsel, suddenly changed its tune. ICE acknowledged the existence of both Detainee Death Reviews. As to Mr. Maradiaga, ICE said it would check on whether the Review was complete. As to Mr. Samimi's Death Review, ICE acknowledged completeness, and said it was being requested

from the ICE Office of Professional Responsibility for whatever review is required by ICE FOIA before release. A copy of that email is **Exhibit 4**.

7. Virtually every word uttered by ICE as set forth above has been disingenuous at best. As to Mr. Maradiaga, late last month the Plaintiff received a copy of a letter dated January 18, 2018 from ICE addressed to another FOIA requester, Robin Urevich, denying her request for the Maradiaga investigation record. This letter was written by Catrina Pavlik-Keenan, the same ICE-FOIA officer that submitted a declaration in this case describing her supervision of the ICE FOIA office staffed by only a handful of persons. ECF No. 25 at *¶12*. The denial letter acknowledged the existence of the Maradiaga Detainee Death Review and claimed no exemption on grounds of incompleteness, but only on the ground that disclosure might interfere with ongoing law enforcement proceedings. A copy of that letter is **Exhibit 5**. Of course, at two years following Mr. Maradiaga's death, any suggestion of incompleteness of the Detainee Death Review is not credible. It is now evident that the four-person ICE FOIA office has been aware of the Maradiaga Death Review and its contents since at least January 2018. ICE not only withheld the Maradiaga Death Review from the Plaintiff, but denied its existence throughout this litigation, all in violation of FOIA. *See* 5 U.S.C. §552(a)(6)(A).

8. As to Mr. Samimi, the ACLU recently filed a complaint in the District of Colorado alleging that the ACLU requested Mr. Samimi's death investigation record in late December 2017, and that, on July 3, 2018, an ICE representative advised the ACLU that the investigation had been completed and the file forwarded to ICE-FOIA for review and prompt release. Case No. 19-cv-01036, ECF No. 1 at ¶ 39. A copy of that pleading is **Exhibit 6**. Thus, this file has been in the hands of ICE-FOIA for 11 months, more than adequate time for complete

review. Further, the Plaintiff has just learned that the Samimi Detainee Death Review was actually released to another requester—Brittany Freeman, a reporter for Rocky Mountain Public Broadcasting Service ("PBS")—early in May 2019. On May 20, 2019 the Samimi Detainee Death Review was posted with an article on the PBS web site. *See* posting, http://www.rmpbs.org/blogs/news/ice-review-of-death-in-aurora-immigration-detention-facility-finds-deficiencies-in-detainees-medical-care. The contents of that posting have been reported by numerous other media.

9. Hence, ICE has been well aware of both death investigation files for the entire pendency of this action but pretended they did not exist. ICE put the Plaintiff through meaningless and time-consuming word-search exercises in a futile effort to find the Death Reviews in a 60,000-page data set (identified with search terms ICE had declined to share with Plaintiff) which ICE well knew did not contain them. All the while ICE was fully aware of the existence, contents, and whereabouts of the two Detainee Death Reviews. ICE obviously has found these Detainee Death Reviews problematic and understandably prefers not to disclose them – the Samimi Death Review, to be charitable, reveals callously neglectful medical practices that resulted in the death of a detained immigrant, followed by a coverup. In the process, ICE has committed violations of FOIA and sanctionable litigation conduct.

10. The word search process has been equally useless in finding policies and protocols relating to medical and mental health care, accommodations for detainees with disabilities, and segregated confinement of detainees. The Plaintiff has not only limited the categories of such records sought, but also has made extraordinary efforts to improve upon the search terms utilized. The best to come of those efforts was to reduce the responsive document

pool to nearly 10,000 images which, at ICE's pace, will take 20 months for normal ICE FOIA review. *See* copy of email exchange **Exhibits 2 and 4**. Despite the Court's direction to do so at the last scheduling conference on February 15, 2019, ICE has refused to undertake the most efficient means of finding such records: inquiring of the decision-makers in the subject matter areas in Washington D.C. and Aurora.

11. This case calls for an award of attorney fees to the Plaintiff under FOIA, 5 U.S.C. §552(a)(4)(E). ICE refused to provide any response to Plaintiff's requests as required by law until ordered to do so by this court. The transparency that has and will result from this case serves the public interest. *See* Declaration of Parveen Parmar, M.D., filed herewith as **Exhibit 7**, attesting in detail to the public need for information contained in Detainee Death Reviews to assure that immigrant detainees receive a humane level of medical treatment and care. Conversely, the Plaintiff's interests are fully dedicated to human rights, and Plaintiff receives no commercial benefit from the information being produced. ICE had no reasonable basis for withholding the material portions of any of the documents requested and has claimed none.

12. More importantly, the Court has the inherent authority to sanction the utterly atrocious litigation conduct exhibited by ICE in this matter as described above with an interim award of attorney fees incurred in this matter to date, payable forthwith. *See Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1258 (10th Cir. 2015) (The Court has inherent power to impose punitive sanctions in the form of attorney fees for bad faith conduct in litigation).

## CONCLUSION

Wherefore, Plaintiff respectively moves this Honorable Court to order as follows:

1. To award Plaintiff, as a sanction for Defendant ICE's misconduct in this litigation, fair compensation for all attorney time expended by Plaintiff's counsel in this matter to date, and that the Court establish a schedule for the Plaintiff's counsel to submit substantiation of time expended and reasonable hourly rates and for the defense to respond;

2. That Defendant ICE produce forthwith the Detainee Death Reviews and related documents for Vincente Caceres Maradiaga and Kamyar Samimi;

3. That Defendant ICE produce all known policies and protocols that inform decisions on medical and mental health care, accommodations for disabilities, and segregated confinement of detainees, both nationally and at the Aurora facility after making fulsome inquiry of decision makers on those subjects at ICE's home offices and at the field offices supervising the Aurora facility; and

4. For such further relief as the Court may deem appropriate in the circumstances.

Dated this 23rd day of May 2019.

                                                Respectfully submitted,

                                                */s/ Thomas B. Kelley*
                                                Thomas B. Kelley
                                                Killmer Lane & Newman, LLP
                                                1543 Champa Street, Suite 400
                                                Denver, Colorado 80202
                                                Telephone: 303.571.1000
                                                Facsimile: 303-571-1001
                                                tkelley@kln-law.com

                                                Amber R. Gonzales
                                                Armstrong Teasdale LLP
                                                4643 S. Ulster Street

Suite 800
Denver, Colorado 80237
Telephone:  720.200.0676
agonzales@armstrongteasdale.com

Steven D. Zansberg
Ballard Spahr LLP
1225 17th Street
Suite 2300
Denver, Colorado 80202
Telephone: 303.292.2400
zansbergs@ballardspahr.com

*Attorneys for Plaintiff CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May, 2019, a true and correct copy of the foregoing **PLAINTIFF'S MOTION FOR SANCTIONS AND ORDER TO PRODUCE DOCUMENTS** was transmitted to counsel for Plaintiff using the CM/ECF system which will send notification of such filing to counsel for Defendants as follows:

Mark S. Pestal
Kyle Brenton
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0407
mark.pestal@usdoj.gov
kyle.brenton@usdoj.gov

                                                */s/ Charlotte Bocquin Scull*
                                                Paralegal