**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00302-JLK

CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY and,
UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,

_____

**DECLARATION OF THOMAS B. KELLEY IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**
_____

Thomas B. Kelley ("TBK"), under penalty of perjury, hereby declares:

1.  I am an attorney licensed to practice law in the state of Colorado since 1972. I am lead counsel for the Plaintiff in this action, Civil Rights Education and Enforcement Center ("CREEC"), and have personal knowledge of the facts stated in this Declaration that relate to my work and that of the legal professional timekeepers who assisted me in performing the tasks reasonably necessary in the prosecution of this action, the time reasonably necessary for the performance of those tasks, and the reasonableness of the hourly rates sought by CREEC for that work.

2.  I also have personal knowledge of the facts stated in Section II of CREEC's Motion for Award of Attorney Fees and Costs filed this date and affirm that the same are true and correct, and that Exhibits 1-8 referred to therein and attached are true and correct copies of the following writings and recordings so referenced:

Exhibit 1:     Recording of 12/7/2018 status conference, manually submitted;

Exhibit 2:     Letter of 1/31/2018 by Catrina M. Pavlik Keenen of ICE to Robin Urevich of Muck Rock;

Exhibit 3:     Report of investigation of Death of Vicente Caceres Maradiaga, 6/1/2017;

Exhibit 4:     Complaint in *ACLU v. U.S. Immigration and Customs Enforcement*, Case No. 19-cv-01036, U.S.D.C., D. Colo;

Exhibit 5:     First page of Detainee Death Review for Kamyar Samimi, May 22, 2018;

Exhibit 6:     Email of 12/10/2019 demanding reconsideration of redactions of communications between ICE and GEO Group, Inc., based on 5 U.S.C. 552(b)(5);

Exhibit 7:     Email of 12/19/2019, agreeing to reconsider;

Exhibit 8:     Email of 3/8/2020 providing unredacted versions of ICE/GEO communications.

3.     Since 1972, I have been engaged in the private practice of law dedicated primarily to representing the news and entertainment media and other speakers and publishers, including in matters involving access to government records.  I have been:  for thirty-eight years, rated AV by Martindale Hubbell; for thirty-one years, listed in Best Lawyers in America in the category "First Amendment Law"; for eleven years, nationally ranked by Chambers and Partners in the category "First Amendment Litigation."  I have received the following awards and recognitions: Colorado Freedom of Information Coalition Jean Otto Friend of Freedom Award (2019); ABA Forum on Communications Law Champion of the First Amendment Law (2019); Media Law Resource Center First Amendment Leadership Award (2018); Denver Business Journal Best in the Bar Award in Communications Law (2005); Denver Bar Association Liberty Bell Award (2000).

4. During my 48 years in the practice, I have been a partner in the firms of Hall and Evans, Cooper and Kelley, PC, Faegre & Benson LLP (now Faegre Drinker Biddle & Reath, LLP), Levine Sullivan Koch & Schulz LLP (a national media law boutique firm based in Washington, D.C.) and more recently, of counsel to the firms of Ballard Spahr LLP (a national firm based in Philadelphia) and now Killmer, Lane & Newman ("KLN") in Denver. In those capacities, and as a result of having served as a non-party expert witness in six cases in Colorado Federal and State Courts on reasonableness of attorney time and rates, I am informed of billing practices of firms of all sizes and practices within the Denver Market. Specifically, I am aware of hourly rates billed and paid by clients and the exercise of billing judgment expected by consumers of legal services, including in-house legal departments and insurance claims departments. I am also familiar with the "lodestar" method of determining a fair and reasonable award of attorney fees.

5. I was retained by CREEC to commence and prosecute this action in the fall of 2017, when I was employed as Senior Counsel to Ballard Spahr, LLP ("Ballard") and remained so employed until December 31, 2019, when I joined KLN as Of Counsel. From its inception to its conclusion, I have agreed to handle the engagement on a pro bono basis.

6. In the initial phases of this action, I was assisted by Amber Rose Gonzales ("ARG"), who was an Associate attorney at Ballard with four years' experience as a lawyer and a facility with the Spanish language. Ms. Gonzales' hourly rate at Ballard while she worked on the case was $300. Ms. Gonzales left Ballard Spahr in the fall of 2018 to join another firm, Armstrong Teasdale, LLP, but continued to provide assistance as needed on a pro bono basis.

3

7. As Ms. Gonzales was preparing to leave Ballard, Chad P. Jimenez ("CPJ"), an Associate attorney at Ballard of eight years' experience, including judicial clerkships, joined the team representing CREEC. Mr. Jimenez' hourly rate at Ballard while he worked on the case was $320.

8. I was also assisted by Legal Assistants or paralegals ("LAs") at Ballard Spahr and KLN whose normal billing rate ranged from $175 to $240 per hour. CREEC seeks reimbursement for time expended by all LAs who recorded time in this matter at the rate of $175 per hour.

9. Finally, the work product on behalf of CREEC in this matter received substantial contributions from Elizabeth B. Jordan, Esq. ("EBJ") and Timothy P. Fox, Esq. ("TPF"), who work full time as legal counsel to CREEC and to individuals in litigation matters. Each brought to the case expertise and experience in investigating conditions of confinement of immigration detainees under authority wielded by ICE and in organizing and prosecuting litigation against ICE. Mr. Fox will provide his Declaration attesting to the work and its value contributed by himself, Ms. Jordan, and paralegals employed by CREEC and submitting CREEC's records of time entries by legal professionals.

10. My current billing rate as Of Counsel to KLN is $650 per hour, and I have billed and been paid at or above that level for work in my area of expertise since January of 2018. At the commencement of my work in this matter in the fall of 2017, my billing rate at Ballard was $645 per hour, and CREEC seeks compensation at the rate of $645 per hour for all of my work on CREEC's behalf in this matter.

11.     In my experience, the above hourly rates sought for the above timekeepers are comfortably within the range of reasonable rates charged by law firms in the Denver metropolitan area during 2019 for comparable work in federal court litigation. *See also Biax Corp v NVIDIA Corp.*, No.09-cv-1257-PAB-MEH, 2013 WL 4051908, at *6-7 (Aug. 12, 2013) (Brimmer, J.) (approving billing rates of $454/hr. for 7-year associate, $531.25/hr. for 11-year associate, and $739.50 for 35-year partner); *id.* at *6 (recognizing that National Law Journal study that indicated that, "in 2010, Denver firms billed between $285 and $810 per hour for partners and between $170 and $530 per hour for associates").

12.     The time entries by each of the above timekeepers were recorded substantially contemporaneously with the conclusion of the work described in each time entry. Applying normal and generally accepted billing judgment practices, I reviewed each time entry and eliminated time that arguably involved unnecessary duplication of effort, undue time on task, and tasks not directly necessary to the defense of this action. I have also excluded additional time according to the advice of expert consultant Michael McCarthy as mentioned in his report. The time entries that survived billing judgment review and Mr. McCarthy review and are submitted for compensation are set forth in Exhibits A (Ballard Spahr), B (KLN), and C (Armstrong Teasdale) attached hereto. The time entries excluded on the basis of Mr. McCarthy's audit are: Ballard Spahr: .9 lawyer hrs. @ $645/hr.= $580.50, .5 lawyer hours @ $320/hr.= $160, 1.3 LA hrs. @ $240/hr. = $312, 1.6 LA hrs. @ $190/hr.= $304, 1.0 LA hr. @ $200/ hr. = $200; CREEC legal: LAs 2.5 hrs. @125/hour = $312.50.

13. I have allocated the hours recorded by all timekeepers to the successive phases of the case and provide descriptions of tasks required of each phase, in some cases with time allocated to major specific tasks, as follows:

    **a. Investigation of Facts and Legal Research for and Drafting, Filing, and Service of the Complaint on February 7, 2018 (EFC 1).**

TBK: 39.7; ARG: 11.3; TPF 4.3; EBJ: 11.9; LAs: 5.3.

In addition to review of applicable FOIA statutory and case law, these tasks required review of ICE rules on submission and processing of FOIA requests and well as tracking of all communications between CREEC and ICE by email, telephone, and ICE's web site. That was reasonably necessary to show the Court in detail the extent to which ICE had ignored its obligations under FOIA. Considerable time was also spent in conferences with client representatives and lawyers in the District of Columbia with experience in litigating FOIA matters with against ICE.

    **b. Research, Factual Investigations, Supplemental FOIA Requests for Amended Complaint, Drafting and Obtaining Leave to File First Amended Complaint, and Other Court Filings and Communications Required to move the Case Forward to the Initial Scheduling Conference on August 15, 2018.**

TBK: 56.6; ARG: 15.8; TPF: 4.3; EBJ: 7.6; LAs: 2.1.

The bulk of this time was dedicated to (1) addressing ICE's claim that it lacked resources to produce more than 500 pages of records per month and refusal to agree to any deadlines for production and (2) developing a short-term (for purposes of the August 15 Scheduling Conference) and long-term strategy toward persuading the Court to impose deadlines. That required research of reported and unreported FOIA case law imposing production deadlines and surveying unreported trial court decisions dealing with ICE claims of limited resources. The

parties' differences on these issues required considerable attorney time in Rule 26(f) conferences in which the parties struggled to agree upon a Scheduling Order, including meetings, lengthy phone conferences, exchanges of proposals and counter-proposals, and contentious emails.

This phase also included time (TBK: 12.9; ARG 2.3) dedicated to supplemental FOIA requests similar to those already in issue but involving different detention facilities to be the subject of a First Amended Complaint, and drafting and obtaining leave to file the First Amended Complaint (EFC 19).

### c.    Tasks Required After August 15 Initial Scheduling Conference through the Continued Scheduling Conference of September 25.

TBK: 29.0; ARG: 7.7; TPF: 1.5; EBJ: 11.1; LAs: .8.

This phase required attention to narrowing Plaintiffs' requests to 14 categories and prioritizing those categories, and continuing to meet, negotiate, and exchange drafts and revisions of the proposed Scheduling Order.  Ultimately the parties agreed upon a Scheduling Order specifying the CREEC's drastically narrowed 14 categories of records sought and order of priority in which those categories should be produced.  That proposed Order noted the parties' disagreement on whether deadlines should be imposed.  CREEC's counsel prepared for and attended the continued Scheduling Conference.

This phase also included time (TBK: 8.0; ARG: 1.9) dedicated to factual research and drafting of Plaintiffs' Response to Defendants' Declaration Regarding ICE FOIA Office Workload and Resources (ECF 25).  The latter required analysis of ICE's 2018 Budget request to Congress to show that ICE's assertions in its Declaration were contrary to its representations to Congress.  I believe this filing, among others, contributed to Judge Matsch's decision, on February 15, 2019, to impose a production deadline.

      **d.**    **Tasks Required from Entry of the Scheduling Order on September 25 to December 7 Status Conference.**

TBK: 11.4; EBJ: 7.3.

Counsel continued to meet and negotiate issues of the scope of search and parameters and timing of record production. Counsel for CREEC prepared for and attended the December 7 status conference.  At that conference, the Court ordered the parties to agree upon and submit an order requiring the agency to set out what their production schedule is in each category (ECF 37).

      **e.**    **Tasks Required from December 7 through February 15, 2019 Status Conference.**

TBK: 28.9; TPF: 1.3; EBJ: 9.1; LAs: 1.4.

This phase began with a dispute over the meaning of Judge Matsch's December 7 direction to agree upon a production schedule, which led to the filing of a joint Motion for clarification and a further Order.  *See* EFC 38, 41.  The parties eventually agreed upon a compromise joint Status Report and Proposed Production Schedule (ECF 46) that noted the parties' continuing disagreement over whether deadlines for record production needed to be imposed.  Counsel prepared for and argued CREEC's position at the February 15, 2019 status conference in which the Court ordered production of three prioritized categories of records within 60 days or an explanation why they could not be produced (ECF 47).

      **f.**    **Tasks from February 15 through Demand for Production of May 6.**

TBK: 26.2; ARG: 7.4; CPJ: 1.8; EBJ: 5.8; LAs: 2.2.

In this phase the parties worked together for over a month to agree upon search terms for the three categories of records ordered produced to enable a word search that proved largely

8

meaningless because the records sought were not included in the data set being searched. The parties exchanged contentious emails over ICE's claimed inability to locate the missing Detainee Death Reviews (DDRs) (for Vincente Maradiaga and Kamyar Samimi). In early May, CREEC'S counsel learned that the two missing DDRs and their whereabouts had long been well known to ICE, resulting in CREEC's demand for production of May 6, all as described the CREEC Motion for Award of Attorney Fees and Costs filed herewith at pp. 8-14.

This phase also included time dedicated to drafting of the Plaintiff's Proposed Second Amended Complaint (ECF 57-1 and 57-2).

### g. Tasks Required After Demand for Production on May 6 Until and Settlement Negotiations Began on August 26.

TBK: 39.6; ARG: 8.0; CPJ: 5.8; EBJ: 14.4; LAs: 5.5.

During this phase, ICE was producing documents at a much brisker pace (after Judge Matsch's February 15 Order), and time was spent by counsel for CREEC checking monthly production for compliance.

The primary task in this phase involved time (TBK: 28.4; ARG: 2.6; EBJ 2.1; LAs 1.6) dedicated to the Plaintiff's Motion for Order to Produce Records and for Sanctions (ECF 51) and Reply in support thereof (ECF 58), which, in addition to drafting, required research into Defendants' communications with third persons regarding the two missing Detainee Death Reviews (Maradiaga and Simimi), reconstruction of the communication trail between the parties, and legal research.

This phase also included time dedicated to completion of the Plaintiff's Proposed Second Amended Complaint (ECF 57-1 and 57-2), the opposed motion for leave to file same (ECF 57) and reply brief in support thereof (ECF 68).

      **h.**      **Negotiations Resulting in Stipulation Regarding Conclusion of Matter and Procedure for Determination of Remaining Issues and Plaintiff's Claim for Attorney Fees (ECF 73) Filed January 31, 2020.**

TBK: 15.6; EBJ: 8.6; LAs: 5.3

By August 2019, the Motion for Sanctions was substantially mooted by production of missing DDRs and Protocols, but it and the Motion to Amend remained pending. On August 26, CREEC offered to withdraw both motions and waive further previously ordered production if ICE would agree to produce the Aurora facility expansion documents sought in the proposed Second Amended Complaint. ICE accepted that offer. During this phase, the parties negotiated and drafted the Stipulation Regarding Conclusion of Matter and Procedure for Determining Remaining Issues and Plaintiff's Claim for Attorney Fees (ECF 73) filed 1/31/20.

Also, during this phase, law-student interns employed by Killmer, Lane & Newman, LLP performed approximately 20 hours of legal research on attorney recovery issues for which compensation is not being sought here.

      **i.**      **February 1. 2019 Through Conclusion of Matter as to Substantive Issues on May 1, 2020.**

TBK: 39.9; TPF: .6; EBJ: 7.2; LAs: 2.1.

During this phase ICE produced the Aurora expansion documents with redactions. CREEC's counsel demanded withdrawal of redactions based solely on FOIA exemption (b)(5) for communications with GEO Group, Inc., its operations contractor for the Aurora facility, and ICE acceded to that demand. *See* Exs, 6. 7, and 8. On May 6, the parties compromised the few remaining disputes on exemptions in a settlement that resolved all substantive issues. See Stipulation for Concluding Matter and Setting Briefing Schedule on Plaintiff's Motion for Attorney Fees and Costs. *See* EFC 78 and Minute Order of 5/6/20 (EFC 79). In addition,

10

counsel for CREEC drafted CREEC's Motion for Attorney fees and Costs and began work with Michael McCarthy, Esq., an expert on "lodestar" attorney fee issues. Law-student interns performed approximately unbilled 20 hours on FOIA exemption and attorney fee recovery issues.

      **j.**      **Post-Conclusion Work Preparation of CREEC's Motion for Award of Attorney Fees and Supporting Papers.**

Further billing statements for preparation of the Motion for Award of Attorney Fees and Costs will be submitted by June 22, 2020. CREEC reserves the right to submit further supplemental billing statements as time as further time is expended by legal professionals in the prosecution of that Motion.

14.      The table below provides a statement of the value of time reasonably expended by me and by timekeepers who assisted me in the prosecution of this action:

| **Timekeeper** | **Total Hours Expended** | **Value of Hours Expended** |
|---|---|---|
| Thomas B. Kelley (TBK) | 286.9 @ $645/hr. | $185,050.50 |
| Amber Rose Gonzales (ARG) | 50.2 @ $300/hr. | $15,060.00 |
| Chad P. Jimenez (CPJ) | 7.6 @ $320/hr. | $2,432.00 |
| Timothy P. Fox (TPF) | 12.0 @ $540/hr. | $6,480.00 |
| Elizabeth B. Jordan (EBJ) | 83.0 @ $355/hr. | $29,465.00 |
| Paralegals (LAs) | 24.7 @ $175/hr. | $4,322.50 |
| **TOTAL** | 464.4 total hours | **$242,810.00** |

15. The Plaintiff has incurred costs in this matter of $475.00: $400.00 for the docket fee for commencing this action, and $75.00 for service of process of the Complaint upon the Defendants.

*/s/ Thomas B. Kelley*                        June 8, 2020
Thomas B. Kelley                                        Date