# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01036

AMERICAN CIVIL LIBERTIES UNION OF COLORADO,

        Plaintiff,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

        Defendant.

_____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
_____

**INTRODUCTION**

1.      This is an action under the Freedom of Information Act (FOIA), seeking the immediate processing and release of agency records unlawfully withheld by Defendant United States Immigration and Customs Enforcement (ICE) in response to a FOIA request properly made by Plaintiff American Civil Liberties Union of Colorado.

2.      Plaintiff seeks documents regarding the December 2, 2017 death of Kamyar Samimi. After living in the United States for over four decades, Mr. Samimi was arrested by ICE on November 17, 2017. He died in ICE custody fifteen days later.

3.      In response to Plaintiff's December 20, 2017 FOIA request, ICE produced only five pages, which had nothing to do with Mr. Samimi's death. Plaintiff appealed, and ICE responded on July 3, 2018, stating that its investigation of Mr. Samimi's death had been completed and more documents would be forthcoming. ICE has not produced any additional documents, nor has it responded to Plaintiff's most recent request for a status update.

4. Mr. Samimi's death is one of many incidents highlighting serious deficiencies in medical care in ICE detention. Fifteen months later, the public continues to seek answers as to what caused this tragedy. Nonetheless, ICE has kept the public in the dark.

5. This lawsuit seeks to remedy that wrong and to bring to light vital information of significant public interest.

## JURISDICTION, VENUE, AND ADMINISTRATIVE EXHAUSTION

6. This Court has personal and subject matter jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7. Venue is proper in the District of Colorado pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e). Plaintiff's principal place of business is in Denver, Colorado.

8. Plaintiff has exhausted its administrative remedies under 5 U.S.C. § 552(a)(6) and 6 C.F.R. § 5.8.

## PARTIES

9. Plaintiff American Civil Liberties Union of Colorado is a local affiliate of the American Civil Liberties Union (ACLU). It is a non-profit, nonpartisan 26 U.S.C. § 501(c)(4) membership organization dedicated to the constitutional principles of liberty and equality.

10. The ACLU is committed to ensuring that the American government complies with the Constitution and laws in matters that affect civil liberties and human rights. The ACLU is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. The organization has a particular commitment to ensuring that fundamental constitutional protections of due process and equal protection are extended to

2

every person, regardless of citizenship or immigration status, and that the government respects the civil and human rights of all people.

11. Dissemination of information to the public about actual or alleged government activity is a critical and substantial component of the ACLU's mission and work. Specifically, the ACLU publishes a continuously updated blog, newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials that are broadly disseminated to the public. Such material is widely available to everyone, including individuals, tax-exempt organizations, not-for-profit groups, law students, and faculty, for no cost or for a nominal fee through the ACLU's public education department and website. The websites of the ACLU ([www.aclu.org](http://www.aclu.org)) and ACLU of Colorado ([www.aclu-co.org](http://www.aclu-co.org)) each address civil rights and civil liberties issues in depth, provide features on civil rights and civil liberties issues in the news, and contain many thousands of documents relating to the issues on which the ACLU is focused. These websites also highlights information obtained through the FOIA process as well as analysis of that information.

12. Defendant U.S. Department of Immigration and Customs Enforcement (ICE) is a component of the U.S. Department of Homeland Security (DHS) and an agency within the meaning of 5 U.S.C. § 552(f)(1).

## FACTUAL ALLEGATIONS

### The Death of Kamyar Samimi

13. Kamyar Samimi entered the United States as a student in 1976. He became a Legal Permanent Resident in 1979. Mr. Samimi continued to live in the United States until his death on December 2, 2017.

3

14. On November 17, 2017, ICE agents arrested Mr. Samimi at his home in Thornton, Colorado, and took him into custody at the Aurora Contract Detention Facility (ACDF) in Aurora, Colorado.[1]

15. Fifteen days later, Mr. Samimi died in ICE custody.

16. On December 4, 2017, ICE issued a press release[2] in which it stated, "Samimi fell ill the morning of Dec 2 and ACDF personnel contacted emergency medical services (EMS). He became unresponsive after EMS arrived. EMS began CPR and transported him to [the University of Colorado Medical Campus (UCMC)]. He was pronounced dead by UCMC medical staff at 12:02 p.m."

17. On January 30, 2018, the Adams County, Colorado Coroner issued an autopsy report regarding Mr. Samimi's death. The report indicated that Mr. Samimi "was under a direct supervision suicide watch when he was observed to be 'spitting up blood'. Apparently he had been suffering from gastrointestinal bleeding in the past. His social history included opium addiction at the age of six and addiction to methadone since 1990. He had been 'clean' for two weeks in the ICE facility and was being watched for withdrawal, dehydration, nausea and vomiting."

18. The coroner's concluding opinion was that Mr. Samimi "died of undetermined causes. Chronic obstructive pulmonary disease (emphysema) and gastrointestinal bleeding likely contributed to death. Methadone withdrawal cannot be ruled out as the cause of death[;] however, deaths due to methadone withdrawal are rare."

---

[1] GEO Group, Inc., a private, for-profit prison corporation, operates ACDF under a contract with ICE.
[2] https://www.ice.gov/news/releases/denver-area-ice-detainee-passes-away-local-hospital

4

19. On October 4, 2018, ICE released a report regarding an internal inspection of ACDF conducted by The Nakamoto Group, Inc. This report contained the following details about Mr. Samimi's death:

> At the time of admission, the detainee reported adult depression, heroine [sic] and methadone addiction and complaint of abdominal pain. As a result, the detainee was placed in medical observation directly from intake. The detainee began rather quickly complaining of nausea and vomiting and was observed to vomit blood. On 11/28/201[7], the detainee was observed to have a bed sheet tied tightly around his neck. As a result, he was placed on a Level 1, one-to-one constant suicide watch. On 12/2/201[7] at 11:00 a.m., the detainee was scheduled to be evaluated by the psychologist. The detainee attempted to get into a wheelchair but vomited blood and collapsed. The detainee was noted to stop breathing, and EMS was contacted while medical personnel continued emergency treatment. The detainee was transported to the local community medical center where he was pronounced dead. The most likely cause of death was noted as "the result of asphyxia secondary to aspiration of bloody vomitus".

20. ICE has not publicly released any more information about Mr. Samimi's death.

<u>Public Concern Regarding Mr. Samimi's Death and the Conditions at ACDF</u>

21. Mr. Samimi's death has generated significant attention and concern, as demonstrated, by way of example, by the following complaints and reports.

22. On June 4, 2018, the American Immigration Council and the American Immigration Lawyers Association submitted a complaint to ICE, the DHS Office for Civil Rights and Civil Liberties, and the DHS Office of the Inspector General, regarding the "[f]ailure to provide adequate medical and mental health care to individuals detained in" ACDF. The complaint noted that "the recent death of Kamyar Samimi is particularly concerning" and "highlights the grave responsibility ICE takes on when it chooses to detain an individual— particularly a long-time resident like Mr. Samimi who would have been well-positioned to seek needed medical care on his own were he living in the community."

5

23. In June 2018, Human Rights Watch, the ACLU, the National Immigrant Justice Center, and Detention Watch Network issued a report titled "Code Red: The Fatal Consequences of Dangerously Substandard Medical Care in Immigration Detention." The report discussed Mr. Samimi's death and noted: "ICE has reported that 12 people died in ICE custody in fiscal year 2017—more than in any other fiscal year since 2009 . . . . The circumstances surrounding these deaths deserve scrutiny and should be clarified through prompt and effective investigations."

24. On June 20, 2018, Jared Polis, who was a member of the U.S. House of Representatives at the time, wrote to Acting ICE Director Thomas Homan to convey his "grave concern regarding recent claims of grossly unacceptable and inadequate medical and mental health services faced by detainees at" ACDF. With regard to Mr. Samimi, Congressman Polis said, "It has been over six months since he passed, and the public still knows very little about the circumstances of Mr. Samimi's death. Congress and the general public have an interest in knowing greater details regarding the circumstances of Mr. Samimi's death and if inadequate medical services – services that are provided at taxpayer expense – contributed to his passing in any way."

25. Inadequate medical care at ACDF continues to be a matter of public concern. A March 8, 2019 news article, which referenced Mr. Samimi's death, noted: "There's only one full-time physician at the facility, and that doctor oversees its thousand or so detainees. Immigration lawyers, medical professionals and politicians say that this ratio is one of many examples of extreme medical neglect at the facility."[3]

---

[3] Conor McCormick-Cavanagh, *There's Just One Medical Doctor at Immigration Detention Facility in Aurora*, Westword (Mar. 8, 2019), https://www.westword.com/news/theres-just-one-medical-doctor-for-detainees-at-immigration-facility-in-aurora-11246966.

6

Plaintiff's FOIA Request and Defendant ICE's Response

26.　On December 20, 2017, eighteen days after Mr. Samimi's death, Plaintiff submitted a FOIA request to ICE's records custodian via email at ice-foia@dhs.gov. Plaintiff's FOIA request is attached hereto as **Exhibit 1** and is incorporated by reference.

27.　The request sought "all records in ICE's possession pertaining to Mr. Samimi," including but not limited to the following:

　　a.　"All records pertaining to the circumstances leading to Mr. Samimi's death, including but not limited to any and all medical and mental health records, reports, notes, forms, complaints, incident reports, supplementary reports, witness statements, daily activity logs, incident detail reports, and video and audio recordings."

　　b.　"All records pertaining to Mr. Samimi's detention, including detainee location logs, kites, grievances, responses to kites and grievances, and medical and mental health screenings and assessments."

　　c.　"All records pertaining to ICE's arrest of Mr. Samimi on November 17, 2017 and ICE's investigation leading to that arrest."

　　d.　"All records pertaining to any investigations of the circumstances surrounding Mr. Samimi's arrest, detention, and/or death that are being conducted by the ICE Office of Professional Responsibility, ICE Office of Detention Oversight, or any other U.S. Department of Homeland Security entity."

28.　Plaintiff requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(v)(II) and 6 C.F.R. § 5.5(e)(1)(ii).

29. Plaintiff also applied for waiver or limitation of fees under 5 U.S.C. § 552(a)(4)(A)(ii)(II) and (iii), and 6 C.F.R. § 5.11(b)(6) and (k).

30. On February 14, 2018, the ICE FOIA Office responded to the request by email. This email is attached hereto as **Exhibit 2** and is incorporated by reference.

31. In the email, ICE acknowledged receipt of Plaintiff's FOIA request, invoked a statutory 10-day extension of time to respond, granted Plaintiff's request for a fee waiver, and denied Plaintiff's request for expedited treatment.

32. On March 8, 2018, ICE FOIA Officer Catrina M. Pavlik-Keenan issued a written response to Plaintiff's FOIA request. This response letter is attached hereto as **Exhibit 3** and is incorporated by reference.

33. With this response, ICE produced five pages of documents, which contained redactions. These five pages were printouts of information from a database having to do with Mr. Samimi's immigration case and immigration history.

34. The response indicated that "a search was also tasked to the ICE Office of Professional Responsibility (OPR) and it was determined that due to the open status of the ongoing investigation that any information pertaining to the investigation is withholdable [sic] in its entirety . . . ."

35. The letter further stated: "Please be advised that once all pending matters are resolved . . . , there may be other exemptions which could protect certain information from disclosure . . . ."

8

36. Plaintiff appealed this determination, pursuant to 5 U.S.C. § 552(a)(6) and 6 C.F.R. § 5.8, on May 25, 2018. Plaintiff's appeal letter is attached hereto as **Exhibit 4** and is incorporated by reference.

37. On July 3, 2018, ICE responded to Plaintiff's appeal via a letter from Erin J. Clifford, Chief of the Government Information Law Division, ICE Office of the Principal Legal Division. This letter is attached hereto as **Exhibit 5** and is incorporated by reference.

38. The letter stated: "ICE has determined that due [to] the completion of the investigation into Mr. Samimi's death, new search(s) [sic] or, modifications to the existing search(s) [sic], could be made. Therefore, ICE is remanding your request to the ICE FOIA Office for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive documents."

39. Also on July 3, 2018, ACLU of Colorado staff attorney Arash Jahanian received a voicemail message from a blocked phone number. In the message, a person who identified herself only as an ICE attorney stated that the investigation into Mr. Samimi's death had closed and the requested records were "now available." She said the search was therefore being remanded to ICE FOIA, "and they're going to go ahead and process those records and get them out to you. I figured everybody likes good news the day before a holiday."

40. On August 28, 2018, Mr. Jahanian sent an email to ice-foia@dhs.gov, requesting a status update.

41. On September 5, 2018, Mr. Jahanian received an email response stating that "the ICE FOIA Office has received all responsive documents from corresponding program offices.

9

They are currently being reviewed by a processor. Once that review is complete, they will be delivered directly to you."

42. On December 13, 2018, Mr. Jahanian requested another update by email. As of the filing of this complaint, Plaintiff has yet to receive a response to that email.

43. As of the date of the filing of this Complaint, nine months since the July 3, 2018 communications and nearly sixteen months since Plaintiff submitted its FOIA request, Plaintiff has not received any other correspondence from ICE on the substance of its FOIA Request, nor has Plaintiff received any documents responsive to its Request beyond the five pages ICE produced on March 8, 2018.

44. On April 8, 2019, Mr. Jahanian performed status checks on Plaintiff's FOIA request through the DHS website, https://www.dhs.gov/foia-status.

45. A status check using the number assigned to the original request, 2018-ICFO-19753, resulted in the response: "There is no FOIA request in the system for that number."

46. A status check using the number assigned on appeal, 2018-ICAP-00322, resulted in the following information:

> Request Number: 2018-ICAP-00322
> Received Date: 06/07/2018
> Request Status: Disposition Accepted
> Estimated Delivery Date: 07/11/2018
> Closed Date:
>
> Check performed on 04/01/2019 02:51:53 PM EDT
> Status information is current as of 03/26/2019

47. ICE is in possession and has control over the records sought by Plaintiff and has failed to make reasonable efforts to search for and produce records responsive to Plaintiff's request in a timely manner.

10

48. ICE has wrongfully withheld requested records from Plaintiff.

**CLAIM FOR RELIEF**
*Violation of FOIA, 5 U.S.C. § 552(a)*

49. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

50. Defendant is an agency subject to FOIA, 5 U.S.C. § 552(f), and must therefore release in response to a FOIA request any disclosable records in its possession at the time of the request and provide a lawful reason for withholding any materials as to which it claims an exemption, under 5 U.S.C. § 552(a)(3).

51. Defendant has failed to make a reasonable effort to search for records sought by the Request, and that failure violates FOIA, 5 U.S.C. § 552(a)(3), and Defendant's corresponding regulations.

52. Defendant has failed to promptly make available the records sought by the Request, and that failure violates FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendant's corresponding regulations.

53. Defendant has failed to process Plaintiffs' request as soon as practicable, and that failure violates FOIA, 5 U.S.C. § 552(a)(6)(E), and Defendant's corresponding regulations.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant, and:

(a) Order Defendant to process and release all records responsive to Plaintiff's request immediately;

(b) Award Plaintiff its costs and reasonable attorneys' fees; and

(c) Grant any further relief that this Court deems just and proper, and any other relief as allowed by law.

Respectfully submitted this 9th day of April 2019.

                                */s/ Arash Jahanian*
                                Mark Silverstein
                                Arash Jahanian
                                ACLU Foundation of Colorado
                                303 E. Seventeenth Ave., Suite 350
                                Denver, Colorado 80203
                                Phone: 303.777.5482
                                Fax:    303.777.1773
                                Email:  msilverstein@aclu-co.org
                                                 ajahanian@aclu-co.org

                                ATTORNEYS FOR PLAINTIFF