**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00302-RPM

CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY and
UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,

      Defendants.

---

**DECLARATION OF TIMOTHY FOX**

---

I, Timothy Fox, do hereby declare:

1.      I am over 18 years of age and am competent to make this Declaration. I make this

Declaration on personal knowledge.

2.      I am an attorney licensed to practice law in the state of Colorado in good standing, and

co-executive director of the Civil Rights Education and Enforcement Center ("CREEC").

3.      CREEC is a 501(c)(3) non-profit headquartered in Denver, Colorado which commenced

operations in 2013. CREEC's mission is to provide education and advocacy, including litigation,

to ensure that everyone can fully and independently participate in our nation's civic life without

discrimination based on race, gender, disability, religion, national origin, age, sexual orientation,

or gender identity.

4.      CREEC's Immigration Detention Accountability Project (IDAP) was formed in 2018 to

formalize CREEC's work to ensure that people in the custody of Immigration and Customs

Enforcement ("ICE") receive adequate medical care, mental health care, and accommodations

Case No. 1:18-cv-00302-JLK   Document 80-13   filed 06/08/20   USDC Colorado   pg 2 of 6

for disabilities. Elizabeth Jordan, an attorney in good standing employed by CREEC, is IDAP's

Director.

5.      IDAP engages in litigation on behalf of individuals held by ICE and classes of detained

immigrants. IDAP also carries out significant activities to educate detained immigrants, their

communities, their advocates, and the general public about these issues. For example, Ms. Jordan

and I frequently present at conferences, speak to the press, and consult with attorneys and

advocates.

6.      CREEC submitted FOIAs to ICE seeking basic information on conditions of confinement

for people detained in ICE custody beginning in 2017. After ICE ignored these requests, CREEC

was forced to bring this litigation. I submit this declaration to provide information on the

qualifications of CREEC timekeepers involved in this action, the reasonableness of their rates

and time spent on the case, and the ways in which the litigation and the documents received

therefrom have benefitted the public.

**Qualifications and Rates**

7.  The primary attorneys for CREEC working on this case were Ms. Jordan and myself.

    CREEC paralegals also assisted with research, drafting, and filing.

8.  I received a B.A. from the University of Denver in 1988 and a J.D. from Stanford Law

    School in 1991, where I was a member of the Stanford Law Review. In 2018, my co-founder

    Amy Robertson and I received the ACLU of Colorado's Carle Whitehead Memorial award,

    recognizing lifetime commitment to protecting and extending civil rights and civil liberties.

    CREEC has also been recognized by The Center on Colfax, Colorado's largest LGBTQ

    community center, and the Denver Metro Fair Housing Center.  Ms. Robertson and I jointly

    received the 2012 Award of Excellence from the Colorado Chapter of the American College

of Trial Lawyers. In 2008, I received The Colorado Bar Association Award of Merit. In addition, our law firm, Fox & Robertson (where I worked prior to founding CREEC), was recognized with the 2007 Impact Fund Award, and the Colorado Trial Lawyers Association Case of the Year award in 2006. Ms. Robertson and I have been honored as Fellows of the Colorado Bar Foundation, a designation bestowed upon no more than five percent of the lawyers in Colorado for "outstanding dedication to the welfare of the community, the traditions of the profession and the maintenance and advancement of the objectives of the Colorado Bar Association."

9.  Ms. Jordan is the Director of CREEC's Immigration Detention Accountability Project. She received a B.A. *cum laude* with distinction from Yale University in 2006 and a J.D. *summa cum laude* from the New York University School of Law in 2013, where she was awarded the Order of the Coif and was an Arthur Garfield Hayes Civil Liberties Fellow. Ms. Jordan was a Fulbright Scholar to Spain in 2009-2010 studying international human rights law. For two years prior to joining CREEC as its first Fellow, Ms. Jordan represented unaccompanied minors in their removal proceedings and applications for relief in New York Immigration Court. She has also interned with the Legal Aid Society's Immigration Law Unit working on the detained docket.

10. CREEC billed its time for this case using its 2019 rates. My 2019 rate was $540 per hour, Ms. Jordan's 2019 rate was $355 per hour, and the rate of CREEC paralegals in 2019 was $175 per hour. These rates are similar to the rates for attorneys of similar skill and experience litigating complex class actions in the Denver area.

11. All attorneys and legal staff at CREEC are instructed to maintain contemporaneous time records reflecting the time spent on this and other matters. This includes contemporaneous

recording of the date and amount of time spent on a task to one-tenth of an hour; a

description of the work that was performed during the indicated time period; and

identification of the case to which the time should be charged. CREEC has kept

contemporaneous records documenting in detail all time spent on this matter, including tasks

performed by each timekeeper on each day, in increments of one-tenth of an hour. Those

records are attached to this Declaration as Exhibit 1.

12. The hours my co-counsel and I have spent on this case to date were reasonably expended in

obtaining access to the documents we were entitled to under law. My co-counsel and I spent

time: (1) drafting and revising correspondence, pleadings, and settlement documents; (2)

communicating with representatives of ICE; (3) leading and strategizing positions for the

negotiations with ICE; (4) extensively investigating the basis for the claims in this case,

requiring analysis of past FOIA decisions and exemptions sought by the Defendant; and (5)

appearing before Judge Matsch in chambers on a regular basis for more than a year.

13. We made every effort not to duplicate billing, and to proceed in an efficient manner,

assigning the appropriate attorney or staff member to each task. Further, we are not seeking

reimbursement for some time spent on this case in an exercise of billing judgment.

14. CREEC's 2019 rates are reasonable and the rate sought by I as well as paralegals in this

matter were approved by this Court in 2019 (Ms. Jordan did not work on that case). *See*

Order Approving Settlement and Final Judgment, King v. City of Colo. Springs, Case No.

1:19-cv-00829-JLK (D. Colo. Sept. 30, 2019), ECF No. 18; *see also* Denny v. City and

County of Denver, Case No. 2016-CV-030247 (Dist. Ct., City and County. of Denver)

(approving Mr. Fox's 2016 rate of $510 per hour, and 2016 paralegal rate of $160 per hour).

**Public Interest**

4

15. The documents we have received from ICE pursuant to this litigation – and the litigation itself – have furthered the public interest by informing the public of the government's activities in detaining immigrants, particularly medically vulnerable people and people with disabilities, and increasing transparency on a government activity that is otherwise not accessible to the public, as it takes place behind locked doors.

16. CREEC takes seriously the educational portion of its mission, and that is reflected in the way it has approached this case.

17. As an initial matter, we have created a webpage dedicated to this case on our website, available at https://creeclaw.org/creec-v-dhs-and-ice/. On this page we have posted all of the requests we made in this case, major pleadings, and key documents that were produced in response.

18. We also authored multiple blog posts designed to reach a general audience on our website, available at https://creeclaw.org/creecblog/. By way of example, a blog post from May 23, 2019, documents our Motion for Sanctions in this case, explaining in layperson's terms ICE's ongoing failure to produce documents responsive to our FOIA request, which we allege was sanctionable, and why it was important to hold them accountable for it. That post is available here: https://creeclaw.org/creec-moves-for-sanctions-against-ice-in-our-foia-lawsuit/.

19. We also share documents we have received with reporters and other stakeholders. For example, the Project on Government Oversight has referenced our work in a larger project on medical neglect in ICE detention centers. We were also featured in an article on the Denver Westword online newspaper highlighting the backlog at ICE in responding to FOIA requests. That article is available here: https://www.westword.com/news/ice-sued-in-federal-court-over-backlog-of-foia-requests-and-slow-response-times-10817164.

20. We have also shared the documents we have received with transparency and immigration law and policy stakeholders, presenting on them at conferences two years in a row. We have further shared the documents with congressional offices engaged in oversight of the immigration detention system.

21. Finally, we have relied on evidence produced in this litigation as evidence in litigation challenging systemic failures in ICE's provision of medical and mental health care and accommodation of people with disabilities throughout their immigration detention system. Compl. for Decl. & Inj. Relief for Violations of the Due Process Clause of the Fifth Amend. and Section 504 of the Rehab. Act, 29 U.S.C. § 794, *et. seq.*, Fraihat v. ICE (C.D. Cal. Aug, 18. 2019), ECF No. 1, ¶¶ 320-26, 378-79, 496, 509.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 28, 2020 in Denver, Colorado.

Timothy Fox